**LORI HARPER SUEK**
Assistant U.S. Attorney
U.S. Attorney's Office
James F. Battin U.S. Courthouse
2601 Second Ave. North, Suite 3200
Billings, MT 59101
Phone:     (406) 657-6101
FAX:       (406) 657-6989
E-Mail:    Lori.Suek@usdoj.gov

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  Plaintiff,  vs.  **MIGUEL MORALES,**  Defendant. | **CR 17-108-BLG-SPW**  **OFFER OF PROOF** |

The United States of America, represented by Lori Harper Suek, Assistant United States Attorney for the District of Montana, files its offer of proof.

1

## THE CHARGE

The defendant, Miguel Morales, is charged by indictment with conspiracy to possess with intent to distribute and to distribute methamphetamine in violation of 21 U.S.C. § 846 – count I; and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) – count II.

## PLEA AGREEMENT

Morales will plead guilty to count I of the indictment.   The plea agreement entered into by the parties and filed with the Court is the only offer extended to Morales.   *See Missouri v. Frye,* 566 U.S. 133, 146-147 (2012).

## ELEMENTS OF THE CHARGE

In order for Morales to be found guilty of the charge of conspiracy to possess with intent to distribute and distribute methamphetamine as charged in count I of the indictment, the United States must prove each of the following elements beyond a reasonable doubt:

**First**, there was an agreement between two or more people to distribute methamphetamine or to possess methamphetamine with intent to distribute methamphetamine; and

**Second**, the defendant entered the agreement knowing of its objectives and intending to accomplish at least one of those objectives.

Additionally, while not a formal element of the offense, the government would also have to prove beyond a reasonable doubt that the conspiracy involved

500 or more grams of a substance containing a detectable amount of methamphetamine.

## PENALTY

Count I carries a penalty of a mandatory minimum ten years to life imprisonment, a $10,000,000 fine, five years of supervised release, and a $100 special assessment.

## ANTICIPATED EVIDENCE

If this case were tried in United States District Court, the United States would prove the following:

In the summer of 2015, members of the Eastern Montana High Intensity Drug Trafficking Area task force and FBI Big Sky Safe Streets Task Force began investigating a methamphetamine trafficking organization responsible for transporting multi-pound quantities of methamphetamine from California to Montana for re-distribution.  The individuals traveling from California were Hispanic males from the San Jose area.

During the summer of 2016, the investigation led to a Crow Agency resident, M.R.B.M., who was indicted, pleaded guilty, and has been sentenced for drug trafficking offenses.  R.B.M. was living at the time with K.T.O., one of the Hispanic males, who also was indicted, pleaded guilty, and has been sentenced for

3

his role in this conspiracy. During that same timeframe, R.B. M. met Morales. R.B.M. was able to identify Morales when shown a photograph of him.

K.T.O. introduced Morales to R.B.M. as his little brother. Morales told R.B. M. that he was sent to Montana to determine why K.T.O. and J.S.A., another Hispanic male from California, who is currently pending sentencing, were not sending money back to the organization. Morales asked R.B.M. if she could distribute large quantities of methamphetamine. On one occasion, Morales supplied R.B.M. with two ounces of methamphetamine to sell, worth $4,000, and told her that she only had to pay $2,000 for the methamphetamine. Morales also told her that if she needed methamphetamine, she could contact him.

R.B.M. worked at a storage unit facility in Hardin during the summer of 2016. R.B.M. stored methamphetamine for the organization in a storage unit. The methamphetamine stored in one of the units was in a lock box in ounce quantities. R.B.M. estimated that the box usually held a pound of methamphetamine at a time. When the methamphetamine needed to be picked up for distribution, she would remove the methamphetamine from the unit and she identified Morales as the one that would pick up the methamphetamine most often and take it elsewhere. Additionally, R.B.M. received shipments of methamphetamine to her post office box in Crow Agency. R.B.M. put Morales

on the post office box as a registered user and provided him a key. R.B.M. remembers one particular shipment that was supposed to be a pound but was a bit short.

In June 2016, R.B.M. acquired a Dodge Durango. Morales registered the vehicle in his name using R.B.M.'s address in Crow Agency, because Morales had a valid driver's license, no outstanding warrants, and he is a United States citizen.

K.T.O., consistent with the information provided by R.B.M., confirmed that Morales worked with the drug trafficking organization and was in Montana during the summer of 2016. K.T.O. linked Morales with M.L., a woman in Billings who was indicted, pleaded guilty, and was sentenced for her role in his conspiracy. He reported that Morales was staying with M.L. while in Billings.

M.L. confirmed this information. She met Morales in June 2016. He was with K.T.O. at the time. He introduced himself as Miguel Morales from San Jose, California. M.L. had previously seen him with J.S.A. at R.B.M.'s house in Crow Agency. M.L. understood that Morales was in Montana to take over for J.S.A. M.L. reported that Morales obtained his methamphetamine from a place called "the block" in San Jose. He was in Montana distributing methamphetamine with J.S.A. and K.T.O. Morales also spent a lot of time with R.B.M. on reservation

Review of phone records obtained during the investigation of this case confirm Morales's connection to R.B.M., K.T.O., J.S.A., M.L., and others involved in the conspiracy. Text messages received through those phone records confirm that Morales's phone was in the Billings and Crow areas, and that Morales was making deliveries of methamphetamine to individuals, and picking up money. Those records, coupled with the methamphetamine seizures in this case and the information provided by sources and co-conspirators, establish that the quantity of methamphetamine distributed by this conspiracy exceeded well over 500 grams of methamphetamine.

DATED this 13th day of April, 2018.

KURT G. ALME
United States Attorney

*/s/ Lori Harper Suek*
LORI HARPER SUEK
Assistant U.S. Attorney